# United States Court of Appeals
## For the First Circuit

No. 06-2144

YOLANDA ECHEVARRÍA,

Petitioner,

v.

PETER D. KEISLER,[*] ACTING ATTORNEY GENERAL,

Respondent.

ON PETITION FOR REVIEW OF AN ORDER

OF THE BOARD OF IMMIGRATION APPEALS

Before

Boudin, Chief Judge,

Torruella and Lynch, Circuit Judges.

Valquiria C. Ribeiro on brief for petitioner.
Jennifer Levings, Office of Immigration Litigation, Civil Division, Department of Justice, Peter D. Keisler, Assistant Attorney General, and Terri J. Scadron, Assistant Director, on brief for respondent

October 4, 2007

---

[*]Pursuant to Fed. R. App. P. 43(c)(2), Acting Attorney General Peter D. Keisler is substituted for former Attorney General Alberto R. Gonzales as respondent.

**BOUDIN**, **Chief Judge**.  Petitioner Yolanda Echevarria, a national of the Dominican Republic, entered the United States without permission on November 13, 1999.  She married an American citizen, Ricardo Echevarria, on March 16, 2001, and Ricardo filed a visa petition (I-130) for her shortly thereafter, on April 25, 2001.  Yolanda filed a corresponding form I-485 application to adjust her status to permanent resident.

Under precedent governing such visas, it is not enough that the marriage be formally valid; it must reflect a sincere intention to establish a life together (as opposed to an attempt to evade the immigration laws), and the applicant is expected to provide evidence to support the claim and to remedy deficiencies in proof.[1]  In this case, an immigration officer interviewed both Ricardo and Yolanda and found their responses and documentary evidence insufficient to establish the bona fides of the marriage.

In a detailed Notice of Intent to Deny dated November 7, 2001, the officer listed inconsistencies in the couple's responses, gaps in documentary evidence and other facts adverse to the application.  The notice invited Ricardo to respond within eighteen days to explain the inconsistencies and to submit additional evidence to establish that the marriage met requirements.  Ricardo

---

[1]See Rodriguez v. INS, 204 F.3d 25, 27 (1st Cir. 2000); see also Bark v. INS, 511 F.2d 1200, 1201 (9th Cir. 1975); Matter of Phillis, 15 I. & N. Dec. 385, 386 (BIA 1975).  See generally 8 C.F.R. §§ 204.1-.2.

neither responded to the letter nor exercised his right to appeal the denial. 8 C.F.R. § 204.2(a)(3). Yolanda's application to adjust her status was then denied.

On April 22, 2002, the Immigration and Naturalization Service ("INS") began removal proceedings against Yolanda. 8 U.S.C. § 1182(a)(6)(A)(i) (2000). Ricardo then filed a second visa petition but again he neither responded to the Notice of Intent to Deny nor appealed the denial, which came on July 9, 2003. Yolanda filed an appeal, but as she was not the visa applicant (but rather the beneficiary) she had no standing to do so. 8 C.F.R. § 103.3(a)(1)(iii)(B).

The removal proceedings dragged on for several years. Yolanda was granted continuances, first while her husband's second I-130 visa petition was pending and then while waiting for two consecutive labor certification applications (and a corresponding I-140 employment-based visa petition) to be adjudicated. Throughout she argued that she would be eligible to apply to adjust her status to permanent resident pursuant to 8 U.S.C. § 1255(i) if any of these visa petitions were approved. Ultimately, after a hearing on March 15, 2005, an immigration judge ("IJ") found that Yolanda was ineligible for adjustment of status.

This ruling rested pertinently on a determination that Yolanda did not come within the terms of a grandfather clause that is central to this appeal. Generally, aliens who illegally entered

-3-

the United States are not permitted to apply here for status adjustments. 8 U.S.C. § 1255(a). However, under section 1255(i), such aliens may apply if they were the beneficiaries of visa petitions (or labor certification applications) filed before a sunset date of April 30, 2001. Lasprilla v. Ashcroft, 365 F.3d 98, 99-100 (1st Cir. 2004).

Yolanda's first visa petition was filed by Ricardo on April 25, 2001 (the second visa application and two labor certificates were filed after the sunset date), but the regulations stipulate that an alien does not qualify as the "beneficiary" of a visa petition, and thus cannot be grandfathered, unless the petition was "approvable when filed" before the deadline. 8 C.F.R. § 245.10(a)(1)(i)(A). "Approvable when filed" is defined as "properly filed, meritorious in fact, and non-frivolous." Id. § 245.10(a)(3).

The IJ, in her decision on removability, determined that the first visa application was not approvable when filed. Earlier in the decision the IJ had described the immigration officer's determinations in denying that application, specifically, that the answers to questions about the marriage were vague, inconsistent or at odds with a bona fide marriage and that the documentation provided (e.g., joint bills, shared bank accounts) was insufficient or unpersuasive. The IJ ordered voluntary departure.

-4-

On review, the Board of Immigration Appeals affirmed this determination without reaching an alternative ground also relied on by the IJ.[2]  Yolanda now petitions this court for review.  The principal ground urged on appeal is that the IJ and Board erred in determining that the original visa application was not approvable. The claim turns principally on how the statute and the Board's regulations are to be read.

As already explained, an application is approvable when filed if it is "properly filed, meritorious in fact, and non-frivolous." 8 C.F.R. § 245.10(a)(3).  Yolanda's first visa application met the first requirement (it was timely and in proper form) and seemingly met the third (there was some evidence of a legitimate marriage).  The remaining requirement is that it be "meritorious in fact."

The history of the statute's grandfather clause is illuminating.  The clause aimed to protect those who had legitimate visa applications on file before the more restrictive amendment came into force excluding applications on behalf of those who entered illegally.  It was not the applicant's fault, after all, that it might take time to process applications that had been filed before the law changed.

---

[2]The IJ's removal order rested as well on an independent finding that the marriage had been entered into in an attempt to deceive the immigration authorities, which would independently bar a visa, see 8 U.S.C. § 1154(c); but the Board did not reach this alternative ground and we do not address it.

Thus, the statute provided that a visa application need not have been actually approved before the sunset of April 30, 2001, or even approved at all; in fact, grandfathering rights could attach under the regulation even if the initial timely application were later withdrawn or denied because of later changes in circumstances (e.g., because the resident spouse died). 8 C.F.R. § 245.10(a)(3). But the visa application nevertheless needed to have been "approvable" including "meritorious in fact"--and the question now is what that means.

Yolanda argues that the immigration officer did not affirmatively find that her marriage was pretense but only that the evidence was insufficient to prove it to be real. In principle, an insufficiency of evidence could be remedied by more evidence. Therefore, she concludes, her original visa application was potentially approvable when filed and she should now be entitled to have the IJ make a new finding on a new record whether her marriage was bona fide when entered into.[3]

But before the immigration officer made his determination, Ricardo and Yolanda were interviewed and did submit evidence; and the adverse ruling was founded on an evaluation of

_____

[3]Her alternative--and much broader--conclusion, that the absence of a finding of fraud should automatically qualify her initial petition as meritorious, simply does not follow: the absence of a finding that a petition is fraudulent is not the same as a finding that a petition is meritorious. A deduction on an income tax form can be disallowed as failing on the merits even though it is not dishonestly claimed.

the evidence after an opportunity, not taken by the spouses, to satisfy identified gaps.  In substance, there was a determination on the merits and it was not appealed.  Yolanda does not argue that the officer erred on the record that was before him--nor is it clear how she could now challenge that finding, the time for appeal having long since expired.  8 C.F.R. § 1003.3(a)(2).

In some ultimate objective sense (<u>sub species aeternitatis</u>), a marriage may have been bona fide even if all the evidence at the time pointed in the other direction; even the most affirmative finding to the contrary could, in light of new evidence, prove to have been mistaken.  But there is no reason to think that the grandfathering provision was meant to give a second bite at the apple to one who earlier had a full and fair opportunity to prove that the marriage was bona fide.

The arguments against relitigation are substantial. Evidence as to whether the marriage was or was not bona fide was freshest at the application stage; a second chance was available to mend gaps after receipt of the Notice of Intent to Deny; and timely administrative review could have been pursued.  Immigration cases are already protracted.  Given the stakes in removal cases, a fair chance for Yolanda to present her case was fully warranted; <u>two</u> chances on the same issue is a different matter.

Accordingly, we think that in general, possibly with rare exceptions, a court should not require revisiting the original visa determination, if one was made "on the merits," did not depend on changed circumstances, and could have been effectively reviewed at the time. Whether in the later removal proceeding the IJ or Board could as a matter of grace choose to reexamine their earlier decision is a different issue which is not presented in this case.

Thus, as we view the regulations, the IJ did not have to conduct a brand new review on new evidence. But even if we are mistaken, no basis for further proceedings was established here. There is no developed argument in Yolanda's brief to show a tender to the IJ of substantial new evidence that would likely alter the result, let alone new evidence that was unavailable to the couple at the time of the original decision by the immigration officer.

The IJ was provided a collection of evidentiary items and allowed it to be submitted into the record because Yolanda had sent the items to the Board in her futile attempt to appeal the denial of the second visa application. Yolanda never explains the significance of any of the items, which of them was new (and, if so, why not originally provided to the immigration officer) or why taken together they establish the bona fides of the marriage as of April 2001.

Rather Yolanda's position in this court appears to be that the IJ was under some automatic obligation to decide the bona fides issue afresh on whatever record is now presented long after the event and long after a contrary determination for which no review was sought. We think that there is no such automatic obligation. Even assuming that a court might order reexamination on extreme facts--an issue we do not decide--this case would not be a candidate.

Finally, Yolanda argues that the IJ was obligated to grant yet another continuance to allow Yolanda to pursue her appeal of the second visa denial; she says that a successful appeal would prove that the original visa petition had in fact been meritorious. Only Ricardo, as the visa applicant, had standing to challenge the denial, 8 C.F.R. § 103.3(a)(1)(iii)(B); he did not, and the time for him to do so had expired. Yolanda's appeal was therefore destined to fail and there was no reason for the IJ to delay any further.

The petition for review is denied.