# United States Court of Appeals
## For the First Circuit

No. 08-1399

FRANCISCO ANTONIO CASTRO-SOTO,

Petitioner,

v.

ERIC H. HOLDER, JR.[*], Attorney General,

Respondent.

ON PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Boudin, John R. Gibson,[**] and Howard,
Circuit Judges.

Ramon M. Gonzalez, for petitioner.
Gregory G. Katsas, Assistant Attorney General, Civil Division, John S. Hogan, Senior Litigation Counsel and Regan Hildebrand, Attorney, Office of Immigration Litigation, United States Department of Justice, for respondent.

February 24, 2010

[*]Pursuant to Fed. R. App. P. 43(c)(2), Eric H. Holder, Jr. is substituted for former Attorney General Michael B. Mukasey as the respondent herein.

[**]Of the Eighth Circuit, sitting by designation.

**HOWARD**, **Circuit Judge**. Francisco Antonio Castro-Soto, a citizen and national of the Dominican Republic, petitions for review of the denial of his application for adjustment of status. The Board of Immigration Appeals ("BIA") determined that Castro-Soto was ineligible for adjustment of status because he entered the United States illegally and could not be "grandfathered" under Section 245(i) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1255(i). After review, we agree and deny his petition.

**I.**

In 2005, Castro-Soto entered the United States illegally. He was subsequently detained and charged with removability. At his removal proceeding, Castro-Soto sought adjustment of status, "a process whereby certain aliens physically present in the United States may obtain permanent resident status . . . . without leaving the United States." De Acosta v. Holder, 556 F.3d 16, 18 (1st Cir. 2009). In requesting adjustment, Castro-Soto relied in part on an I-130 visa petition that his spouse had filed on his behalf in December 2004. Despite a statutory bar against adjustment by those who have entered the country illegally, Castro-Soto asserted that the visa petition could support adjustment of his status, because he was "grandfathered" based on a previous visa petition that had been filed on his behalf several years earlier.

This was not the first time that Castro-Soto had attempted to adjust his status based on his marriage to a United

-2-

States citizen.  He first entered the United States in 1988.[1]  At some point thereafter, he married his first wife, a United States citizen.  In March 1992, she filed an I-130 petition on his behalf, seeking to qualify him as an immediate relative-spouse.  See 8 U.S.C. § 1154(a)(1)(A)(i); 8 C.F.R. § 204.1(a)(1); 8 C.F.R. § 204.2(a).

Based on his then-spouse's immediate relative visa petition, Castro-Soto filed an I-485 application for adjustment of status to that of lawful permanent resident.  See 8 U.S.C. § 1255; 8 C.F.R. § 245.1(a).  The immediate relative visa petition received final approval in June 1992, and in December 1992 Castro-Soto's application for adjustment of status was also approved.

The approval of the application for adjustment of status contained conditions, however.  Under the INA, when an alien who has been married to a United States citizen for less than two years receives permanent resident status by virtue of that marriage, the grant of permanent resident status is conditional.  8 U.S.C. § 1186a.  The alien and his spouse must submit a second petition requesting the removal of conditions, at which point the government may terminate the alien's permanent status if it finds that the

---

[1]The record is clear that Castro-Soto obtained conditional lawful permanent residence in December 1992.  The government says that he first entered the United States in 1988, citing a transcript of a hearing that was held below.  This date appears accurate, as the I-130 form filed by Castro-Soto's first wife on his behalf indicates that he arrived in December of 1988.  We thus identify 1988 as his arrival year, although this fact is immaterial to our analysis.

marriage is not bona fide. 8 U.S.C. § 1186a(c), (d). If the alien fails to have the conditions to lawful permanent residence removed, his permanent resident status is terminated as of the date of that determination. 8 U.S.C. § 1186a(c)(3)(C).

Castro-Soto and his spouse did later petition for removal of the conditions, but their petition was denied. An Immigration Judge ("IJ") subsequently found that the petition to remove conditions had been denied because the "[g]overnment questioned the bona fides of the marriage and the intent of the marriage."

Castro-Soto and his first wife divorced in 2001. He then sought relief from the consequences of the previous denial of the joint petition for removal of conditions, through an application for a waiver based on a good faith marriage ending in divorce. In June 2002, the Department of Homeland Security ("DHS") denied the waiver application and placed Castro-Soto in removal proceedings. See 8 U.S.C. § 1227(a)(1)(D)(i) (classifying as "deportable" aliens whose conditional permanent resident status has been terminated).

During removal proceedings, Castro-Soto again sought a waiver for a good faith marriage ending in divorce, and alternatively requested cancellation of removal and voluntary departure. In September 2003, the IJ, though granting Castro-Soto voluntary departure, denied his requests for cancellation of removal and for a waiver. Castro-Soto appealed the IJ's decision to the BIA, which affirmed the IJ's decision in December 2004.

Also in 2004, Castro-Soto remarried.  In January 2005, he left the country pursuant to the voluntary departure order, but not before filing a motion to reopen his case so that he could apply for adjustment of status based on his second wife's petition to categorize him as an immediate relative.[2]  He reentered the United States illegally eight days later and was subsequently placed in removal proceedings.  Before the IJ, Castro-Soto again sought unsuccessfully to adjust his status, claiming that he was permitted to rely on the more recent visa petition because of a grandfathering mechanism triggered by the 1992 visa petition.  The BIA affirmed the IJ's order pretermitting Castro-Soto's application for adjustment.

## II.

Before us, Castro-Soto continues to argue that he is entitled to rely on the earlier I-130 petition filed in 1992 to adjust his status now.  Typically, aliens who enter the United States without inspection or parole are prohibited from applying for adjustment of status.  Echevarria v. Keisler, 505 F.3d 16, 19 (1st Cir. 2007); see also 8 U.S.C. § 1255(a), (c).  An exception to this general rule exists for beneficiaries of visa petitions that

---

[2]The BIA denied this motion to reopen in January 2005.  It concluded that Castro-Soto could not adjust status based on his second-wife's 2004 visa petition because he failed to produce clear and convincing evidence that his second marriage was bona fide. Castro-Soto did not petition for review of this decision, although he did file a motion to reconsider, which the BIA denied in March 2005.  Castro-Soto did not appeal that ruling.

were filed before April 30, 2001. See 8 C.F.R. § 245.10(a)(1)(i)(A), (B); Echevarria, 505 F.3d at 19. Castro-Soto claims that because he is the beneficiary of his first wife's 1992 visa petition, he qualifies under this grandfathering provision to file again for adjustment.

An alien may qualify for grandfathering if he is physically present and the "beneficiary" of a visa petition. § 245.10(a)(1)(i). The visa petition relied upon by the alien must have been (1) filed before April 30, 2001, (2) "properly filed," and (3) "approvable when filed". Id. at (a)(1)(i)(A); (a)(2)(i); (a)(3).[3] If the visa petition has met these three requirements, it may be used for grandfathering purposes even if it "was later withdrawn, denied, or revoked due to circumstances that have arisen after the time of filing". Id. at (a)(3); see also, Echevarria, 505 F.3d at 19. The applicant bears the burden of proving his eligibility for adjustment of status. 8 C.F.R. § 1240.8(d).

The BIA did not question whether the 1992 visa petition upon which Castro-Soto is relying for grandfathering purposes satisfied 245.10's three requirements. Rather, it concluded that Castro-Soto could not rely on the 1992 petition because the government had granted it, and Castro-Soto had relied upon the petition to gain conditional lawful permanent residence. The Board

_____

[3]To be "approvable when filed," a visa petition must have been: "properly filed, meritorious in fact, and non-frivolous." Id. at (a)(3).

-6-

further stressed that Castro-Soto had not only adjusted his status using his ex-wife's visa petition, but also "later failed to obtain removal of the conditions on his permanent residence."

Our review of the BIA's decision is circumscribed. When Congress has entrusted rulemaking and administrative authority to an agency, as it has done with the INA, "courts normally accord the agency particular deference in respect to the interpretation of regulations promulgated under that authority." S. Shore Hosp. Inc. v. Thompson, 308 F.3d 91, 97 (1st Cir. Mass. 2002). We defer to the agency's interpretations of regulations of its own creation unless the agency's position is "plainly erroneous or inconsistent with the regulation." Massachusetts v. United States, 522 F.3d 115, 127 (1st Cir. 2008). We conclude that it was not plainly erroneous or inconsistent with the regulation for the BIA to find that Castro-Soto had obtained all of the benefit due to him based on the 1992 petition, and that the petition was therefore extinguished and cannot now provide grandfathered status.[4]

---

[4]The government takes the position that, once Castro-Soto initially obtained the benefit of conditional permanent residence, the petition was no longer available to be used for grandfathering. The government's position may be correct, but we are not certain that the BIA's ruling is quite that broad, and we need not adopt the broader reading in order to reject the petitioner's argument. We are not here faced with a situation in which, for example, the petitioner obtained conditional resident status and then, prior to the deadline for petitioning to remove the conditions, sought to rely on the grandfathered petition to adjust status on a different basis.

Congress has generally allowed only lawfully present aliens to adjust their status while in the United States, in order "to discourage intending immigrants from moving to the United States before becoming fully eligible for permanent residence and to encourage them to follow the orderly consular process for the issuance of immigrant visas." Lee v. U.S. Citizenship & Immigration Servs., No. 08-1659, 2010 U.S. App. LEXIS 1569, at *4 (4th Cir. Jan. 25, 2010). In 1994, however, Congress temporarily lifted restrictions on certain illegal aliens who sought adjustment of status. Id. The grandfather clause, instituted after the expiration of this 1994 Act, "aimed to protect those who had legitimate visa applications on file before the more restrictive amendment came into force excluding applications on behalf of those who entered illegally." Echevarria, 505 F.3d at 19. We have observed that it was not these applicants' fault "that it might take time to process applications that had been filed before the law changed." Id.

It is not an illogical corollary that an applicant's grandfathered status should expire once he has obtained all of the benefits available through a visa petition. The DHS reached this very conclusion in a 2005 policy memorandum in considering the potential for multiple filings for adjustment of status under Section 245(i):

> A grandfathered alien is eligible to file an application to adjust status under section 245(i) as long as the alien meets the requirements of 8 C.F.R. 245.10 and has <u>not</u> adjusted status under section 245(i). USCIS no longer considers an alien "grandfathered" once the alien is granted adjustment of status under section 245(i), because the alien has acquired the only intended benefit of grandfathering: [Lawful Permanent Resident] status.

Interoffice Memorandum from William R. Yates, Associate Director for Operations, U.S. Citizenship and Immigration Services, Department of Homeland Security, Clarification of Certain Eligibility Requirements Pertaining to an Application to Adjust Status under Section 245(i) of the Immigration and Nationality Act, HQOPRD 70/23.1 at 6 (March 9, 2005). This guidance memorandum is entitled to our respect to the extent that it is persuasive. See <u>Christensen</u> v. <u>Harris County</u>, 529 U.S. 576, 587 (2000).[5]

---

[5]The quoted language is consistent with the regulations themselves, which provide that certain visa petitions approvable when filed but later "withdrawn, denied or revoked due to circumstances that have arisen after the time of filing" can still be used to establish an alien's grandfathered status. 8 C.F.R. § 1245.10(a)(3). Castro-Soto's spouse's 1992 petition was approved, and it was never revoked. Indeed, although the regulations provide for automatic revocation under certain circumstances -- for example, divorce -- this provision is only triggered when the circumstance occurs <u>before</u> the government's final decision on the beneficiary's adjustment application. 8 C.F.R. § 1205.1 (a)(3). Castro-Soto's adjustment of status was granted in December, 1992. He and his first wife did not divorce until 2001.

Nowhere do the regulations state that an <u>approved</u> petition, as opposed to one that is pending, withdrawn, denied or revoked, can be used to preserve the alien's grandfathered status. The BIA could reasonably conclude from this silence that this exclusion was

Castro-Soto argues that his 1992 visa petition was never extinguished because he never acquired lawful permanent resident status <u>without conditions</u>. DHS's 2005 memorandum, he observes, explains that the government "no longer considers an alien 'grandfathered' once the alien is granted adjustment of status under Section 245(i) <u>because</u> the alien has acquired . . . <u>[Lawful Permanent Resident]</u> status" (emphasis added). Castro-Soto urges us to hold that because he only acquired <u>conditional</u> lawful permanent resident status, his 1992 visa petition is still available for purposes of grandfathering.

No persuasive authority is cited to support this interpretation, and in any event there is a significant problem with it. Were we to adopt Castro-Soto's view, all grandfathered aliens who, because of their own lack of proof, failed to remove conditions attached to their lawful permanent resident status could simply fling infinite subsequent petitions or applications for adjustment until one happened to stick. Congress could not have intended such a result. <u>Cf.</u> <u>Echevarria</u>, 505 F.3d at 19–20 ("There is no reason to think that the grandfathering provision was meant to give a second bite at the apple to one who earlier had a full and fair opportunity to prove the marriage was bona fide.").

intentional. <u>See</u> <u>Lohnes</u> v. <u>Level 3 Commc'ns, Inc.</u>, 272 F.3d 49, 61 (1st Cir. 2001) ("[T]he maxim expressio unius est exclusio alterius instructs that, 'when parties list specific items in a document, any item not so listed is typically thought to be excluded.'")(citation omitted).

Indeed, this reading would undermine the government's ability to use conditional resident status as a tool to root out unlawful immigration based on sham marriages. See Choin v. Mukasey, 537 F.3d 1116, 1120 (9th Cir. 2008) ("Congress . . . created the conditional permanent resident status to enable the government to gather two years of evidence about a marriage before granting full permanent resident status.")

Because Castro-Soto married his first wife less than two years before she filed her I-130 petition on his behalf, this petition provided him a basis to obtain only conditional lawful permanent resident status and, at most, the later opportunity as well as the obligation to seek the removal of those conditions. See 8 U.S.C. § 1186a(c), (d). Castro-Soto fully exercised his right to petition to have his conditions removed. As mentioned, he and his first wife filed a joint petition to have the conditions on his lawful permanent resident status removed, but the agency questioned the bona fides of the marriage and denied that petition. After he and his first wife divorced, Castro-Soto filed a waiver application for a good faith marriage ending in divorce which, if granted, would have removed the conditions on his lawful permanent resident status. The BIA affirmed the denial of that waiver application, however, and Castro-Soto never petitioned for review of that decision.

**III.**

We affirm the BIA's determination that the 1992 petition was extinguished for grandfathering purposes, at the latest, by the time Castro-Soto's conditional lawful permanent residency expired and he became removable.

**Petition denied.**