Kwabena OPOKU–AGYEMAN and
Maud Opoku–Agyeman,
Plaintiffs,

v.

Nelson PEREZ, et al., Defendants.

Case No. 12–06006–CV–SJ–GAF.

United States District Court,
W.D. Missouri,
St. Joseph Division.

July 24, 2012.

Robert Frager, Kansas City, MO, for Plaintiffs.

Christopher W. Hollis, U.S. Department of Justice, Washington, DC, for Defendants.

## ORDER

GARY A. FENNER, District Judge.

Presently before the Court is Defendants Nelson Perez, Citizenship & Immigration Services, Alejandro Mayorkas, and Janet Napolitano's (collectively "Defendants") Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. (Doc. # 5). Plaintiffs Kwabena Opoku–Agyeman ("Plaintiff") and Maud Opoku–Agyeman ("Ms. Opoku–Agyeman") oppose. (Doc. # 9). For the reasons set forth below, Defendants' Motion is GRANTED.

## DISCUSSION

### I. FACTS

On October 26, 2007, Plaintiff submitted a Form I–130 to the United States Citizenship and Immigration Services ("USCIS"), titled "Petition for Alien Relative" (the "Petition"), seeking to obtain immediate relative status for Plaintiff's wife, Ms. Opoku–Agyeman. (March 24, 2009, USCIS Denial Letter ("USCIS Denial")). Plaintiff's Petition was denied by USCIS on March 24, 2009. (*Id.*). According to USCIS, Plaintiff's Petition was denied because Ms. Opoku–Agyeman had previously married for the purpose of evading the immigration laws, as prohibited by 8 U.S.C. § 1154(c).[1] (*Id.*).

---

1. Eight U.S.C. § 1154(c) states, in relevant part, "[N]o petition shall be approved if (1)

In determining that Ms. Opoku–Agyeman previously married for the purpose of evading the immigration laws, USCIS looked to a previous Form I–130 filed on behalf of Ms. Opoku–Agyeman by Tyrone Henderson ("Henderson"). (January 22, 2009, USCIS Notice of Intent to Deny Form I–130 ("Notice of Intent to Deny")). Henderson filed a Form I–130 on February 17, 2006, seeking immediate relative status for Ms. Opoku–Agyeman as his wife. (*Id.*). On June 5, 2006, Henderson and Ms. Opoku–Agyeman were interviewed under oath by a USCIS interviewer concerning Henderson's submitted Form I–130. (*Id.;* June 5, 2006, Video Recording: Tyrone Henderson's Sworn Testimony) ("Henderson Interview Testimony"); Video Recording: Maud Opoku–Agyeman's Sworn Testimony ("Ms. Opoku–Agyeman Interview Testimony"). In the USCIS interview, Henderson testified his marriage with Ms. Opoku–Agyeman was entered into to help Ms. Opoku–Agyeman become a United States citizen. (Henderson Interview Testimony; *see* Notice of Intent to Deny). Additionally, Henderson stated he and Ms. Opoku–Agyeman had not lived together and he lived with another woman, his girlfriend. (Henderson Interview Testimony; *see* Notice of Intent to Deny).

Before USCIS denied Plaintiff's Petition, it sent Plaintiff a Notice of Intent to Deny. The Notice of Intent to Deny informed Plaintiff that USCIS intended to deny his Petition because the evidence indicated Ms. Opoku–Agyeman conspired to enter into her marriage with Henderson for the purpose of evading immigration laws. (Notice of Intent to Deny, pp. 1–2). USCIS noted Henderson's testimony that his marriage with Ms. Opoku–Agyeman was entered into to confer upon her an immigration benefit. (*Id.* at 2). USCIS

also noted Henderson's testimony that he never lived with Ms. Opoku–Agyeman, instead living with his girlfriend, and the discrepancies between Henderson and Ms. Opoku–Agyeman's testimonies. (*Id.*). Additionally, USCIS pointed to evidence that a lease submitted by Henderson as proof of his marriage was actually between Ms. Opoku–Agyeman and Martinson Ansah. (*Id.*). The Notice of Intent to Deny afforded Plaintiff thirty (30) days to submit a written response detailing why his Petition should not be denied for the reasons stated in the Notice of Intent to Deny, (*Id.*).

In response to the Notice of Intent to Deny, Plaintiff submitted several affidavits and a copy of a lease. (*See* February 19, 2009, Letter from Robert Frager Re: Kwabena Opoku Agyeman). The lease was for property at 2823 Collis Ave Apt # 7, Huntington WV, 25702, and was between owner Preston S. Cole and "Maud Opoku and Tyrone Henderson." (2823 Collis Avenue Lease (the "Lease")). The first affidavit was from Augustine Oppong, an uncle of Ms. Opoku–Agyeman, in which he stated he 1) witnessed their wedding, 2) mailed things to them at their shared apartment, 3) was told they were having problems with their marriage, and 4) could not believe Henderson claimed they never lived together. (Affidavit of Augustine Oppong). Joseph Opoku, Ms. Opoku–Agyeman's older brother, also filed an affidavit stating 1) he was invited to the wedding between Henderson and Ms. Opoku–Agyeman, 2) he visited them at their apartment, and 3) Henderson was abusive toward Ms. Opoku–Agyeman. (Affidavit of Joseph Opoku). A third affidavit was from Agatha Serwaa, a friend of Ms. Opoku–Agyeman, in which she stated 1) she

the alien ... has sought ... an immediate relative or preference status as the spouse of a citizen ... by reason of a marriage determined by the Attorney General to have been entered into for the purpose of evading the immigration laws...."

was invited to their wedding, 2) they visited her in February 2006, and 3) Henderson and Ms. Opoku–Agyeman had marital issues. (Affidavit of Agatha Serwaa). Joana Badu, another friend of Ms. Opoku–Agyeman, submitted a fourth affidavit stating 1) she was invited to Ms. Opoku–Agyeman's wedding to Henderson, 2) Ms. Opoku–Agyeman complained about Henderson's behavior, and 3) she visited them at their apartment. (Affidavit of Joana Badu). A fifth affidavit was submitted by Plaintiff, describing how he met Ms. Opoku–Agyeman and the marital issues between her and Henderson. (Affidavit of Kwabena Opoku–Agyeman).

Ms. Opoku–Agyeman also submitted an affidavit. (February 18, 2009, Affidavit of Maud Opoku–Agyeman ("Ms. Opoku–Agyeman Aff.")). Ms. Opoku–Agyeman's affidavit described how she met Henderson, how their relationship developed, marital problems they experienced, Henderson's threats to deport her, and how Henderson left her shortly after the USCIS interview. (*Id.*).

On March 24, 2009, after receiving the affidavits and lease submitted by Plaintiff, USCIS denied Plaintiff's Petition. (USCIS Denial). The USCIS Denial acknowledged Plaintiff's submissions but determined they were not as probative as other evidence of record. (*Id.* at 2). In support of its denial, USCIS noted 1) the discrepant answers given by Henderson and Ms. Opoku–Agyeman in their interviews, 2) Henderson's testimony that the marriage's purpose was to confer an immigration benefit on Ms. Opoku–Agyeman, 3) follow-up address checks, and 4) an interview with the owner of the property allegedly shared by Henderson and Ms. Opoku–Agyeman. (*Id.*).

Plaintiff appealed the USCIS Denial. (March 17, 2010, Decision of the Board of Immigration Appeals ("BIA Denial")). After a de novo review, the Board of Im-

migration Appeals ("BIA") dismissed Plaintiff's appeal. (*Id.*). In dismissing Plaintiff's appeal, the BIA noted the numerous discrepancies between Henderson and Ms. Opoku–Agyeman's testimonies, Henderson's statements describing the marriage, Henderson's statement that he lived with his girlfriend, address checks, and interviews performed by USCIS. (*Id.* at 2). The BIA also determined the affidavits submitted by Plaintiff were not credible because only the affidavit from Ms. Opoku–Agyeman was from a person with actual knowledge of the marriage and her affidavit was self-serving and contradictory to other evidence. (*Id.*).

Plaintiff filed a motion asking the BIA reconsider its March 17, 2010, Denial. (May 31, 2011, Decision of the Board of Immigration Appeals ("BIA Reconsideration Denial")). The BIA denied Plaintiff's Motion to reconsider, noting that although Plaintiff submitted affidavits in support of his Petition, those affidavits "must be considered in conjunction with other evidence of record, including the interviews of the parties and the statement of the beneficiary's previous husband who stated that they were only friends and that he married the beneficiary solely for the beneficiary to obtain an immigration benefit." (*Id.* at 2). The BIA reiterated the discrepancies in Henderson and Ms. Opoku–Agyeman's interview testimony and Henderson's descriptions of the marriage. (*Id.*). In its BIA Reconsideration Denial, the BIA expressed its specific reservations regarding the affidavits submitted by Plaintiff:

As we noted in our previous decision, only the beneficiary was able to offer first hand knowledge of the bona fides of the marriage. The petitioner and the beneficiary's uncle both provided statements that provided very little evidence regarding the relationship between the beneficiary and her previous husband. The beneficiary's sister and her two

friends submitted affidavits that also provided very limited first hand information about their relationship. The beneficiary's sister lives in Chicago and was unable to attend the wedding. Her first hand knowledge of the relationship is based on a one day visit to the beneficiary's home in West Virginia. The beneficiary's two friends both live in New Jersey. While they provided insight into the relationship, both affidavits are based upon very limited periods of time spent with the beneficiary and her previous husband. While the affidavits are consistent in stating that the beneficiary was unhappy in the relationship and that her previous husband was abusive, there are insufficient details to overcome the other evidence of record that it was not a bona fide marriage.

(*Id.* at 3).

On January 19, 2012, Plaintiff and Ms. Opoku–Agyeman filed their Complaint, requesting the Court find the USCIS Denial and the BIA Denial to be in error. (Complaint, p. 6). The Complaint further requested the Court conduct a de novo hearing, including listening to the taped testimonial interviews and making independent facts and conclusions of law with respect to Plaintiff's Petition. (*Id.*). Finally, the Complaint requested the Court order USCIS to conduct another adjudication of Plaintiffs Petition and that Plaintiff be awarded costs, expenses, and attorney fees under the Equal Access to Justice Act, 28 U.S.C. § 2412. (*Id.* at 7).

Defendants filed this Motion on March 19, 2012. (Doc. # 5). Attached to Defendants Motion were the USCIS interviewer's notes and memo describing Henderson and Ms. Opoku–Agyeman's interviews. (Doc. # 5–8; Interviewer's Memo Re: I–130/I–485 Interview on June 05, 2006). The USCIS interviewer noted several inconsistencies surrounding Henderson and Ms. Opoku–Agyeman's descriptions of

their lives. (Interviewer's Memo Re: I–130/I–485 Interview on June 05, 2006). For example, Henderson testified he drove to work with "Martin," whereas Ms. Opoku–Agyeman testified Henderson drove to work with "Sherea" and Henderson testified he went to school in West Virginia, whereas Ms. Opoku–Agyeman testified Henderson went to school in Ohio. (*Id.*). Also attached was the interview video that recorded Henderson and Ms. Opoku–Agyeman's testimonial interviews with US-CIS. (Henderson Interview Testimony; Ms. Opoku–Agyeman Interview Testimony). Although the evidence submitted by the parties does not explicitly state that USCIS and the BIA relied on the interviewer's notes and memo and on the interview video, the parties do not dispute that USCIS and the BIA did so rely. (*See* Docs. ## 5, 9, 11).

## II. LEGAL STANDARD

Summary judgment should be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). "Summary judgment is appropriate if the evidence, viewed in the light most favorable to the [nonmovant] and giving [the nonmovant] the benefit of all reasonable inferences, shows there are not genuine issues of material fact and [the movant] is entitled to judgment as a matter of law." *Price v. N. States Power Co.*, 664 F.3d 1186, 1191 (8th Cir.2011) (citation omitted). "Once the moving party has made and supported their motion, the nonmoving party must proffer admissible evidence demonstrating a genuine dispute as to a material fact." *Holden v. Hirner*, 663 F.3d 336, 340 (8th Cir.2011) (citation omitted). Summary judgment should not be granted if a reasonable jury could find for the nonmoving party. *Woodsmith Publ'g Co. v. Meredith Corp.*, 904 F.2d 1244, 1247 (8th Cir.1990);

*accord Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## III. ANALYSIS

■ Initially, it should be noted the Court has jurisdiction to decide this case because "district courts have jurisdiction to review a decision on the merits of an I-130 petition to classify an alien as a relative of a United States citizen." *Ginters v. Frazier,* 614 F.3d 822, 827 (8th Cir.2010) (citation omitted).

■ Defendants first contend Ms. Opoku–Agyeman should be dismissed as a party for lack of standing. (Doc. # 5, p. 2). Defendants' contention is correct; only Plaintiff has standing to challenge the Agency's decision. *See Echevarria v. Keisler,* 505 F.3d 16, 18 (1st Cir.2007) (citing 8 C.F.R. 103.3(a)(1)(iii)(B)) (stating beneficiaries have no standing to appeal a denial of a visa petition).[2] Therefore, Ms. Opoku–Agyeman is DISMISSED as a party for lack of standing.

Defendants allege summary judgment is appropriate in this case because Defendants are entitled to judgment as a matter of law on Plaintiff's claim that Ms. Opoku–Agyeman be declared eligible for a visa under the Petition. (Doc. # 5). According to Defendants, they are entitled to judgment as a matter of law because the BIA's decision to deny Ms. Opoku–Agyeman's Petition was not arbitrary or capricious or contrary to law. (*Id.,* p. 3).

In its denial, the BIA found "the statement of Mr. Henderson substantial and probative evidence that the marriage between himself and the beneficiary was solely for the purpose of obtaining an immigration benefit for the beneficiary." (BIA Denial, p. 2). Accordingly, the BIA

dismissed Plaintiffs appeal of USCIS's decision because the BIA found the Petition should be denied under § 1154(c). (*Id.* at 1). The BIA listed several reasons for its decision: 1) Plaintiff submitted only one (1) affidavit from someone who had actual knowledge of Ms. Opoku–Agyeman's marriage with Henderson; 2) said affidavit lacked credibility because it was from Ms. Opoku–Agyeman and because it contradicted "substantial and credible evidence of record;" 3) Henderson's descriptions of the marriage in his testimony; and 4) other evidence of record, including address checks, statements made by Ms. Opoku–Agyeman, and interviews performed by the USCIS, comported with Henderson's testimony. (*Id.*).

■ " 'Where, as here, the BIA issues an independent decision without adopting [USCIS's] conclusions, we review only the BIA decision.' " *Popescu–Mateffy v. Holder,* 678 F.3d 612, 615 (8th Cir.2012) (quoting *Constanza v. Holder,* 647 F.3d 749, 753 (8th Cir.2011)). A BIA petition denial will be affirmed if it is "supported by substantial evidence in the record." *Gumaneh v. Mukasey,* 535 F.3d 785, 787–88 (8th Cir. 2008) (citation omitted). A district court reviews questions of law de novo and reverses "findings of fact only if the evidence is 'so compelling that no reasonable fact finder could fail to find in favor of the petitioner.' " *Id.* at 788 (quoting *Turay v. Ashcroft,* 405 F.3d 663, 666 (8th Cir.2005)).

■ The BIA's Denial was supported by substantial evidence in the record. Henderson testified his marriage to Ms. Opoku–Agyeman was to assist her in obtaining an immigration benefit. (Henderson Interview Testimony). Additionally, the USCIS interviewer noted sev-

---

**2.** Plaintiff and Ms. Opoku–Agyeman concede that Ms. Opoku–Agyeman does not have

standing to sue in this case. (Doc. # 9, § I).

eral inconsistencies surrounding Henderson's and Ms. Opoku–Agyeman's descriptions of their lives. (Interviewer's Memo Re: I–130/I–485 Interview on June 05, 2006). For example, Henderson stated he drove to work with "Martin," whereas Ms. Opoku–Agyeman stated Henderson drove to work with "Sherea" and Henderson stated he went to school in West Virginia, whereas Ms. Opoku–Agyeman stated Henderson went to school in Ohio. (*Id.*). Also, the only documentary evidence presented by Plaintiff supporting his claim that Henderson and Ms. Opoku–Agyeman did not enter into a sham marriage was the Lease. (*See* USCIS Denial, p. 2). Although Plaintiff also submitted affidavits from various individuals, only Ms. Opoku–Agyeman's affidavit actually described Henderson and Ms. Opoku–Agyeman's married life. (*See* February 19, 2009, Letter from Robert Frager Re: Kwabena Opoku Agyeman; Ms. Opoku–Agyeman Aff.). The BIA found Ms. Opoku–Agyeman's affidavit lacked credibility. A district court affords great weight to the credibility findings of the BIA. *Fofanah v. Gonzales*, 447 F.3d 1037, 1040 (8th Cir. 2006) (citation omitted).

■ Plaintiff makes several arguments that the BIA's Denial should not be affirmed. Plaintiff first argues Defendants cannot use the USCIS interviewer notes and memo or the video recording of Henderson and Ms. Opoku–Agyeman's interviews with USCIS to justify the denial of Plaintiff's visa petition. (Doc. # 9, § III). Plaintiff alleges reliance on these exhibits is improper under 8 C.F.R. § 103.2(b)(16), which states

> [a]n applicant or petitioner shall be permitted to inspect the record of proceeding which constitutes the basis for the [Agency's] decision, except … if the decision will be adverse to the applicant or petitioner and is based on derogatory information considered by the [Agency]

and of which the applicant or petitioner is unaware, he/she shall be advised of this fact and offered an opportunity to rebut the information and present information in his/her own behalf before the decision is rendered….

8 C.F.R. § 103.2(b)(16)(i).

■ According to Plaintiff, USCIS was required to furnish to Plaintiff a copy of the USCIS interviewer notes and memo and the video recording of Henderson and Ms. Opoku–Agyeman's interviews with USCIS if the BIA wanted to rely on that evidence in its decision. (Doc. # 9, § III). Plaintiff misstates the law. Section 103.2 "does not require USCIS to provide, in painstaking detail, the evidence of fraud it finds." *Ogbolumani v. Napolitano,* 557 F.3d 729, 735 (7th Cir.2009). Additionally, § 103.2 does not mandate Plaintiff "be provided an opportunity to view each and every sworn statement." *Ghaly v. I.N.S.,* 48 F.3d 1426, 1434 (7th Cir.1995). USCIS's Notice of Intent to Deny, sent before the Petition was denied, informed Plaintiff USCIS intended to deny his Petition because 1) Henderson and Ms. Opoku–Agyeman had numerous discrepancies in their USCIS interviews and 2) Henderson stated he married Ms. Opoku–Agyeman to give her an immigration benefit in his interview. (Notice of Intent to Deny, p. 2). The summarized information provided by USCIS in its Notice of Intent to Deny satisfied the requirements of § 103.2. *See Ghaly,* 48 F.3d at 1434 ("[A] summary of the grounds sufficient in detail to explain its reasoning for the" denial satisfies § 103.2).

■ Plaintiff also argues reliance on the USCIS interviewer notes and memo and the video recording of Henderson and Ms. Opoku–Agyeman's interviews constituted a due process violation. (Doc. # 9, § III). A due process argument will fail if a petitioner cannot show USCIS violated

§ 103.2. *See Hassan v. Chertoff,* 593 F.3d 785, 789 (9th Cir.2010) (stating the petitioner failed to raise a colorable constitutional argument when the government did all that was required under § 103.2). As discussed above, Plaintiff cannot show USCIS violated § 103.2 because the Notice of Intent to Deny provided Plaintiff with the information required by § 103.2.

Additionally, Plaintiff argues the BIA Denial is improper because it ignored the affidavits submitted by Plaintiff. (Doc. # 9, § IV). The BIA Denial did not ignore the affidavits submitted by Plaintiff; instead, the Denial discussed the affidavits and found they were not probative because they were not authored by individuals with first-hand knowledge of the marriage between Henderson and Ms. Opoku–Agyeman or were self-serving. (BIA Denial, p. 1). Moreover, the Court does not require a BIA decision to weigh evidence submitted by a petitioner more heavily. A BIA decision need only be supported by substantial evidence. *Gumaneh,* 535 F.3d at 787–88. The BIA Denial, as discussed above, is so supported.

█ Finally, Plaintiff argues the marriage between Henderson and Ms. Opoku–Agyeman was a nonviable marriage, not a sham marriage. (Doc. # 9, § IV). A marriage is not necessarily a sham marriage under 8 U.S.C. § 1154(c) just because the marriage ended in a divorce or separation. *Bark v. I.N.S.,* 511 F.2d 1200, 1202 (9th Cir.1975); *see also Lutwak v. United States,* 344 U.S. 604, 611, 73 S.Ct. 481, 97 L.Ed. 593 (1953) (stating that a valid marriage may still be a sham marriage for purposes of § 1154(c)). However, the BIA did not rely on the fact that Henderson and Ms. Opoku–Agyeman's marriage ended in divorce as a basis for its denial. (*See* BIA Denial). Instead, the BIA relied on other evidence in the record, such as Henderson testifying the purpose of the marriage was to give Ms. Opoku–Agyeman

an immigration benefit. (*Id.* at 1). Plaintiffs argument is immaterial because the BIA had substantial support for its denial regardless of the nonviability of Henderson and Ms. Opoku–Agyeman's marriage.

The BIA's Denial was supported by substantial evidence from the record, therefore it will be affirmed. *See Gumaneh,* 535 F.3d at 787–88. Accordingly, Defendants are entitled to summary judgment for Plaintiff's claim that Ms. Opoku–Agyeman be declared eligible for a visa under the Petition.

### CONCLUSION

Ms. Opoku–Agyeman is dismissed for lack of standing. The BIA Denial is supported by substantial evidence, including Henderson's attestation that the purpose of his marriage with Ms. Opoku–Agyeman was to confer on her an immigration benefit. Accordingly, for these reasons and the reasons set forth above, Defendants' Motion is GRANTED.

**IT IS SO ORDERED.**