# United States Court of Appeals
## For the First Circuit

No. 07-1155

SILVIA DE ACOSTA,

Petitioner,

v.

ERIC H. HOLDER,JR.* Attorney General,

Respondent.

ON PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Lynch, <u>Chief Judge</u>,

Torruella and Howard, <u>Circuit Judges</u>.

<u>William P. Joyce</u> and <u>Joyce & Associates P.C.</u> for petitioner.
<u>Peter D. Keisler</u>, Assistant Attorney General, Civil Division,
<u>Mark C. Walters</u>, Assistant Director, Office of Immigration
Litigation, and <u>Joanne E. Johnson</u>, Attorney, United Immigration
Division, on brief for respondent.

February 12, 2009

---

*Pursuant to Fed. R. App. P. 43(c)(2), Eric H. Holder, Jr. is
automatically substituted for former Attorney General Michael B.
Mukasey as the respondent herein.

**HOWARD**, **Circuit Judge**.  Silvia De Acosta, a citizen of Brazil, petitions for review of the denial of her application for adjustment of status.  The Immigration Judge ("IJ") found De Acosta ineligible for adjustment of status under § 245(i) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1255(i), and thus removable.  The IJ's finding rests on two distinct statutory criteria, each of which independently supports a determination of ineligibility:  she was not "grandfathered" because she did not file her application for labor certification on or before April 30, 2001, and, furthermore, at the time of her appearance before the IJ in July 2005, there were no visas available for her employment category.  The Board of Immigration Appeals ("BIA") affirmed the IJ's ruling without opinion.  We deny the petition for review.

## I.

We set out the facts as they appear from the record.  Petitioner, then Silvia Silva, arrived in the United States in July 1995 on a B2 (tourist) visa that expired in January 1996.  She remained in the United States beyond that date, and thus is considered to have entered the country without inspection.  See 8 U.S.C. § 1225.  She has been employed at the Greenery Rehabilitation and Skilled Nursing Center (the "Greenery") in Hyannis, Massachusetts since October 2000.  In 2001, she began the process of applying for an adjustment of status to become a lawful permanent resident.

-2-

The first step in applying for an adjustment of status based on employment is for the employer to file, on the alien's behalf, a labor certification application. See 8 U.S.C. § 1255(i)(1)(B)(ii). The Greenery sent De Acosta's labor certification application in to the Massachusetts Division of Employment and Training ("DET") on April 2, 2001, and DET received and date-stamped the application on April 5, 2001. It appears that DET returned the application to De Acosta's employer for correction and resubmission.[1] It also appears that DET received the resubmitted application on June 1, 2001. The date stamp of April 5, 2001 is crossed out on De Acosta's application, and "6.1.2001" is handwritten in next to it. DET assigned June 1, 2001, as the "priority date."[2]

Around this time, De Acosta married a United States citizen and sought an adjustment of status on that basis instead. As a result of this development, neither she nor her employer monitored the status of her labor certification application with DET. Her application for an adjustment of status based on the

_____

[1] A letter in the record from a DCS employee, obtained in April 2005, states that De Acosta's application was "received . . . on April 5, 2001 and returned . . . to the Attorney of Record for corrections of USDOL regulations on the application."

[2] A priority date is used by the United States Citizenship and Immigration Service to set out the priority with which an alien will be able to obtain a visa, or will be allowed to adjust status.

-3-

marriage was denied in February 2003, at which time she was served with a Notice to Appear in removal proceedings.

De Acosta then renewed her efforts to apply for an employer-sponsored adjustment of status. Her labor certification application (with the June 1, 2001 priority date) was approved by DET's successor, the Massachusetts Division of Career Services ("DCS") in June, 2003. Her employer then submitted Form I-140 to the United States Citizenship and Immigration Services ("USCIS"), and that petition was approved in January, 2004. De Acosta had appeared before an IJ in August, 2003 after initially requesting a continuance, and conceded removability. Prior to her next appearance, De Acosta filed an application for adjustment of status in order to avoid removal, and, in the alternative, applied for voluntary departure.

The IJ found at De Acosta's final hearing in June, 2005 that the filing date for De Acosta's labor certification application, for the purposes of grandfathering her application for adjustment of status under section 245(i) of the INA, was the priority date assigned to her labor certification application (June 1, 2001). Accordingly, the IJ concluded that she was ineligible to apply for adjustment of status because she failed to meet the statutory requirement that a labor certification application must be filed on or before April 30, 2001. See 8 U.S.C. § 1255(i)(B)(ii). Also, as an alternative, independent ground for a

-4-

finding of ineligibility, the IJ found that De Acosta failed to show that a visa was immediately available to her, as required by 8 U.S.C. § 1255(i)(C)(2)(B). The IJ held that De Acosta was thus ineligible for adjustment of status and granted her request for voluntary departure in lieu of removal.

De Acosta appealed the IJ's decision to the BIA on both the timely filing issue and the visa availability issue. The BIA affirmed the IJ's opinion without writing separately.

## II.

Ordinarily, we will affirm a decision on adjustment of status if the decision is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." Syed v. Ashcroft, 389 F.3d 248, 251 (1st Cir. 2004) (citation and internal quotation marks omitted).[3] Additionally, as here, when the BIA summarily affirms the IJ's opinion, this court reviews the decision of the IJ. Quevedo v. Ashcroft, 336 F.3d 39, 43 (1st Cir. 2003). Our decision in this case, however, is governed by De Acosta's failure to contest a dispositive issue.

In her petition for review, De Acosta raises only the issue of her eligibility for an adjustment of status based on the filing date of her labor certification application. She does not offer an explanation for why the IJ erred in finding her

---

[3] The parties dispute the standard of review applicable to questions of law in this case, but our resolution of the case does not require us to address this issue.

inadmissible under 8 U.S.C. § 1255(i)(C)(2)(B), the provision requiring that an applicant have a visa immediately available. The government argues that De Acosta's failure to brief any argument on the visa availability question constitutes a waiver of that dispositive issue and that on this basis alone, we should affirm the IJ's finding of ineligibility.

We agree that the visa availability issue is waived.[4] See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990)("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."). Further, we agree that the visa availability issue is dispositive. Nevertheless, we address briefly the IJ's alternative ruling that De Acosta's untimely filing of her labor certification application rendered her ineligible for adjustment of status.

Adjustment of status is "a process whereby certain aliens physically present in the United States may obtain permanent resident status . . . without leaving the United States." 3B Am. Jur. 2d Aliens & Citizens § 2134. An alien can seek adjustment of status as a form of relief in removal proceedings, and in that case the burden is on the alien to establish eligibility. 8 U.S.C. § 1229a(c)(4). In general, aliens who enter the country without

---

[4] Although we need not decide the issue, substantively it appears that the IJ was correct in determining that for De Acosta's employment category, "Other Workers," in June 2005, no visas were available. Information on the availability of visas is published monthly by the United States State Department.

-6-

inspection are not eligible to seek adjustment to lawful permanent resident status.  See 8 U.S.C. §§ 1255(a),(c).  De Acosta, however, argues that she is eligible for an exception created by 8 U.S.C. § 1255(i).

To be eligible for an adjustment of status under this exception, an alien who has entered the United States without inspection must obtain an approved petition (either an immigrant visa petition or an application for labor certification), as described in 8 U.S.C. §§ 1255(i)(1)(B)(i)-(ii).  Applicant eligibility additionally depends on the "grandfathering" provision contained in 8 U.S.C. § 1255(i)(1)(B).  An alien's petition must have been filed by April 30, 2001, in order to preserve the alien's ability to file an application for adjustment of status (in other words, to "grandfather" the alien). 8 U.S.C. § 1255(i)(1)(B)(ii).

Grandfathering applies when there has been "[a]n application for labor certification under section 212(a)(5)(A) of the [INA] that was properly filed pursuant to the regulations of the Secretary of Labor on or before April 30, 2001, and which was approvable when filed."  8 C.F.R. § 245.10(A)(1).  The term "approvable when filed" means the application was "properly filed, meritorious in fact, and non-frivolous."  8 C.F.R. § 245.10(A)(3) (2007).  "Properly filed" means the application was "properly filed and accepted pursuant to the regulations of the Secretary of Labor, 20 C.F.R. 656.21."  8 C.F.R. § 245.10(A)(2) (2007).

In her petition, De Acosta argues that, in this case, it was error for the IJ to equate the "priority date," which is June 1, 2001, with the date of filing for purposes of the grandfathering analysis. De Acosta does not argue that the priority date is not relevant, just that her particular assigned priority date was not the same as her date of filing. She suggests that agency regulations and guidance indicate that other documentation, not exclusively the priority date, can be used to establish when a labor certification application was filed. De Acosta points to a 1999 INS memo giving an example of what would be sufficient "documentary proof" of a properly filed application for labor certification: "a receipt or statement from the DOL that its records indicate that the application was submitted to the appropriate State Agency prior to [April 30, 2001]." Robert L. Bach, Executive Associate Commissioner, INS, Accepting Applications for Adjustment of Status Under Section 245(i) of the Immigration and Nationality Act, (June 10, 1999) *reprinted in* 76 No. 25 Interpreter Releases 1017; see also Ramchandani v. Gonzales, 434 F.3d 337, 339 (5th Cir. 2005) (suggesting that evidence of when a labor certification application was submitted can consist of "some showing" that the application was filed).

Further, De Acosta argues that she has made such a showing. She argues that the cover letter from April 2, 2001, the signatures on the application dated April 2, 2001, and the date

-8-

stamp of April 5, 2001, all serve to indicate that her labor certification application was properly filed before April 30, 2001. She points out that DCS can and does return applications, without date-stamping, if applications are severely faulty in the filing. De Acosta argues that the fact that her application was date-stamped, rather than being returned to her employer without a date stamp, suggests that the application was not severely faulty in the filing and was, in fact, approvable when filed.[5]

Nevertheless, the IJ's decision to deny De Acosta adjustment of status based on the priority date rather than the dates offered by De Acosta was supported by substantial evidence.

Ultimately, De Acosta's attempt to establish that her application was "approvable when filed" on a date other than the priority date fails. Even were we to accept De Acosta's points regarding the cover letter, application signatures, and date stamp, other record evidence indicates that as of April 30, 2001 -- the dispositive date for grandfathering purposes -- De Acosta's application was still not "properly filed" under 8 C.F.R. § 245.10(A)(2) and therefore was not "approvable as filed."[6]

---

[5] The IJ granted three continuances for additional hearings beyond the initial adjustment of status hearing to receive evidence on the discrepancy between the priority date of June 1, 2001, and the apparent application receipt date of April 5, 2001.

[6] An application must be, among other things, "properly filed" at the time of filing to be considered "approvable when filed." 8 C.F.R. § 245.10(a)(3). The petitioner bears the burden of showing that his or her application was approvable when filed. Id. §

Specifically, the record evidence indicates that De Acosta's application was not properly filed because it was incomplete. As of April 30, 2001, De Acosta had failed to provide her signature on one of the required supporting forms -- the "statement of the qualifications of the alien." The form, though ultimately signed and submitted by Acosta, is dated May 30, 2001 -- precisely one month after the relevant cut-off date.

The absence of this form when the application was first submitted provides a reasonable explanation for the June 1, 2001 priority date assigned by the agency. Accordingly, the IJ's reliance on the priority date, in this particular case, was not erroneous. And, accordingly, the IJ's ultimate conclusion, that De Acosta was not eligible for grandfathering because she failed to satisfy her burden of demonstrating eligibility for adjustment of status, is supported by substantial evidence. Cf. Echevarria v. Keisler, 505 F.3d 16, 18 (1st Cir. 2007) (insufficient evidence of the bona fides of marriage renders an application not "approvable when filed").

Our conclusion notwithstanding, we acknowledge some uncertainty about whether an IJ may rely exclusively on the priority date when determining the timeliness of an application. Helpfully, the BIA may want to address this particular issue in an appropriate case.

---

1229a(c)(2).

**Petition denied.**