# United States Court of Appeals
## For the First Circuit

No. 19-1258

MARCIO BATISTA DE OLIVEIRA and DEBORA DOS SANTOS OLIVEIRA,

Petitioners,

v.

ROBERT M. WILKINSON,
Acting Attorney General of the United States,[*]

Respondent.

PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before
Howard, Chief Judge,
and Thompson, Circuit Judge.[**]

Stephanie Marzouk for petitioners.
Todd J. Cochran, Trial Attorney, Office of Immigration
Litigation, Civil Division, U.S. Department of Justice, with whom
Joseph H. Hunt, Assistant Attorney General, Civil Division, and
John S. Hogan, Assistant Director, Office of Immigration
Litigation, were on brief, for respondent.

---

[*] Pursuant to Fed. R. App. P. 43(c)(2), Acting Attorney
General Robert M. Wilkinson has been substituted as the respondent.
[**] Judge Torruella heard oral argument in this matter and
participated in the semble, but he did not participate in the
issuance of the panel's opinion in this case. The remaining two
panelists therefore issued the opinion pursuant to 28 U.S.C.
§ 46(d).

February 22, 2021

**HOWARD**, <u>**Chief Judge**</u>. Marcio and Debora Oliveira, a husband and wife who are natives and citizens of Brazil, petition for review of a ruling of the Board of Immigration Appeals ("BIA") affirming the determination of an Immigration Judge ("IJ") that they were not eligible for an adjustment of status pursuant to the "grandfathering" provisions of § 245(i) of the Immigration and Nationality Act ("INA"). 8 U.S.C. § 1255(i). The Oliveiras argue that the BIA applied incorrect standards in determining that a labor certification application ("LCA") filed on behalf of Marcio Oliveira was not "approvable when filed." The Oliveiras also argue that the BIA erred in denying their motion to remand, which contained additional evidence.

Because the IJ and BIA did not appropriately focus their inquiry, we grant the petition for review and remand to the BIA for further proceedings.

## I.

We first recount the underlying facts and then, because our task is to evaluate their decisions, summarize the proceedings before and judgments of the IJ and BIA.

### A. Factual History

Marcio and Debora Oliveira independently came from Brazil to the United States on tourist visas in 2000, but both of them overstayed their visas. The two met and married in 2002 and have three children who are United States citizens.

- 3 -

Sometime in late 2000 or early 2001, Marcio Oliveira became aware of the INA and the "grandfathering" provisions of § 245(i) that would allow individuals meeting specified criteria to remain legally in the United States with qualifying visa petitions or labor certification applications filed on or before April 30, 2001. Oliveira contacted Florida attorney Alan Glueck and was told that Glueck would assist Oliveira in finding an employer with a qualifying job opening who would then file an LCA on behalf of Oliveira. Glueck's office requested, and Oliveira provided, records about Oliveira's employment in Brazil with an accounting company prior to coming to the United States. With Glueck acting as its agent, NF Business Corporation filed an LCA naming Oliveira as the beneficiary for the position of "Clerk-Typist." The LCA had a priority date of April 24, 2001.

After the LCA was filed, Glueck was investigated and subsequently disbarred for assisting his business partner in the unlicensed practice of law. Another Florida attorney, Scott Kimmel, contacted Oliveira to inform him of the investigation into Glueck. Kimmel's office connected Oliveira with an individual named Ron Thomas, whom Oliveira understood to be investigating Glueck on behalf of the federal government. Oliveira spoke with Thomas on the phone and answered Thomas's questions about Glueck. Oliveira understood that Kimmel and his office would be taking over Glueck's representation of Oliveira in connection with the

- 4 -

LCA. Oliveira testified at the hearing before the IJ that he made attempts to get in touch with Kimmel about the LCA, but never received any updates or copies of the relevant paperwork. As a result, the Oliveiras lost track of the LCA and its status.

The record before the IJ did not include a copy of the LCA itself or any paperwork regarding the approval or denial of the LCA. We do know, however, that Oliveira never received a visa as a result of the LCA, never worked for NF Business Corporation, never visited its offices, was never extended a formal job offer by NF Business Corporation, never had an official job interview with NF Business Corporation, and, at the hearing before the IJ, did not have an understanding of the company's business. Oliveira also did not have a working understanding of the responsibilities associated with the prospective job, beyond knowing that "it was like an office job" and testifying that he believed that Glueck and NF Business Corporation had chosen the job based on the qualifications and work experience that Oliveira had provided to Glueck and his colleagues.

In September 2004, the Oliveiras were each served with a Notice to Appear, neither of which contained a date or time for a hearing. In 2005, an IJ consolidated the Oliveiras' cases and the Oliveiras admitted the factual allegations and conceded the charges of removability in their respective Notices to Appear. In 2015, the Boston & Maine Fish Company filed a new LCA naming

Oliveira as the beneficiary, and on April 12, 2016, the Oliveiras applied to adjust their statuses pursuant to § 245(i).

### B. The IJ's Decision

After a hearing in which the Oliveiras were represented by counsel and Marcio Oliveira testified, the IJ issued an oral decision denying the Oliveiras' application for adjustment of status and ordering them removed to Brazil. Relying on our decision in Santana v. Holder, 566 F.3d 237 (1st Cir. 2009), the IJ held that the Oliveiras bore the burden of demonstrating that the LCA was "approvable when filed," meaning it was: (1) properly filed, (2) meritorious in fact, and (3) non-frivolous. See 8 C.F.R. § 245.10(a)(3). The IJ found that Oliveira had not met that burden with respect to the "meritorious in fact" requirement based on the lack of documentary evidence provided by the Oliveiras and the lack of a relationship between Marcio Oliveira and NF Business Corporation. The IJ expressly declined to address whether the LCA was properly filed or non-frivolous. The IJ also did not discuss the BIA decision in Matter of Muhammad Imran Butt ("Matter of Butt"), 26 I. & N. Dec. 108 (BIA 2013), in which the BIA set forth a standard to determine whether an LCA, as distinct from a visa petition, was meritorious in fact. The IJ stated that "[t]his is a case that comes down to the respondent simply being unable to meet his burden."

## C.  The BIA's Decision

On February 8, 2019, the BIA affirmed the ruling of the IJ.  The BIA both adopted the IJ's ruling ("For the reasons stated by the Immigration Judge, we decline to disturb the Immigration Judge's determination.") and added its own legal rationale.  The BIA quoted its prior decision, Matter of Butt, at length, stating that:

> A labor certification is 'meritorious in fact' if it was 'properly filed' and 'non-frivolous, []so long as a bona fide employer/employee relationship exists where the employer has the apparent ability to hire the sponsored alien and where there is no evidence that the labor certification is based on fraud.'

(quoting Matter of Butt, 26 I. & N. at 116).  The BIA concluded that, although he "acted with good faith and with due diligence," because Oliveira (1) had never met with the employer, (2) did not know the job requirements, and (3) never received a job offer from the employer, he had failed to demonstrate the existence of the employment relationship required by 8 C.F.R. § 245.10(a)(3) and Matter of Butt.  Like the IJ, the BIA declined to address whether the LCA was "properly filed" or "non-frivolous," addressing only the "meritorious in fact" prong.

While their appeal to the BIA was pending, the Oliveiras filed a Motion to Remand containing new evidence that they claimed had been previously unavailable.  The proffered evidence showed that Attorney Glueck's business partner, Elyane Bechtinger, was

- 7 -

named as an officer of NF Business Corporation in 2002. Oliveira also offered an additional affidavit recollecting that he had spoken to Bechtinger about the prospective job at NF Business Corporation as part of his dealings with Glueck around the time that Oliveira submitted paperwork regarding his previous work experience, and that Oliveira's conversation with Bechtinger had served as a job interview for the position at NF Business Corporation, which she offered to him.

The BIA denied the Oliveiras' Motion to Remand on the basis that the Oliveiras had failed to show that the evidence was previously unavailable. The BIA also found that the evidence would not change the outcome of the case because it was insufficient to show that the required employer/employee relationship existed.

## II.

We review the BIA's findings of law de novo and its findings of fact under the substantial evidence standard, "asking whether the BIA's determination is 'supported by reasonable, substantial and probative evidence on the record considered as a whole.'" Santana, 566 F.3d at 240 (quoting De Acosta v. Holder, 556 F.3d 16, 20 (1st Cir. 2009)); see also Aguilar-Escoto v. Sessions, 874 F.3d 334, 336-37 (1st Cir. 2017). "We consider BIA and IJ decisions together where the Board adopts and supplements the IJ's reasoning." Aguilar-Escoto, 874 F.3d at 336 (internal quotation marks omitted) (citing Martinez v. Holder, 734 F.3d 105,

111 n.15 (1st Cir. 2013)).  We review the BIA's decisions on Motions to Remand (or Reopen) for an abuse of discretion.  See Pakasi v. Holder, 577 F.3d 44, 48 (1st Cir. 2009); see also Ming Chen v. Holder, 722 F.3d 63, 66 (1st Cir. 2013).

**III.**

The Oliveiras make three arguments on appeal: (1) the BIA applied an incorrect standard in determining whether the LCA was meritorious in fact; (2) the BIA erred in finding that the LCA was not meritorious in fact; and (3) the BIA erred in refusing to remand on the basis of the Oliveiras' additional evidence.  Because we agree with the Oliveiras' first argument, we need not address the other two.

The Oliveiras argue that they are eligible for adjustment of status, "a process whereby certain aliens physically present in the United States may obtain permanent resident status . . . without leaving the United States."  Santana, 566 F.3d at 238 (alterations in original) (quoting De Acosta, 556 F.3d at 18) (internal quotation marks omitted).  The INA provides that individuals meeting certain requirements are eligible for adjustment of status through "grandfathering," and therefore are not removable.  See 8 U.S.C. § 1255(i).  To qualify for grandfathering, an individual must have been physically present in the United States on December 21, 2000, and be the beneficiary of a visa petition or LCA that was filed on or before April 30, 2001.

- 9 -

See 8 C.F.R. § 245.10 (setting forth the specific requirements for grandfathering under INA § 245(i)). The visa petition or LCA must have been both (i) properly filed and (ii) approvable when filed. See 8 C.F.R. § 245.10(a)(1)(i).

The parties agree that the Oliveiras were physically present in the United States as of December 21, 2000, and an LCA filed by NF Business Corporation naming Marcio Oliveira as the beneficiary was filed with a priority date of April 24, 2001. Therefore, if that April 24, 2001 LCA was approvable when filed and properly filed, Marcio Oliveira and, derivatively, Debora Oliveira are eligible to adjust their respective statuses under § 245(i).

We agree with the IJ and the BIA that, for an LCA to be approvable when filed, it must have been, on the date it was filed and under the circumstances that existed at the time of filing: (1) properly filed, (2) meritorious in fact, and (3) non-frivolous. 8 C.F.R. § 245.10(a)(3) (defining "frivolous" to mean "patently without substance"). An LCA that meets the above requirements qualifies an individual for grandfathering even if "later withdrawn, denied, or revoked due to circumstances that have arisen after the time of filing." Santana, 566 F.3d at 240 (quoting 8 C.F.R. § 245.10(a)(3)) (internal quotation marks omitted).

The BIA and IJ expressly declined to address whether the LCA was properly filed or non-frivolous. Instead, they based the

- 10 -

denials of relief solely on their finding that the LCA was not meritorious in fact.

Cases examining the meritorious-in-fact standard have generally interpreted it to require that the petitioner demonstrate that the visa petition or LCA qualified for approval under the standards in effect at the time it was filed. See, e.g., Agor v. Sessions, 751 F. App'x 60, 62 (2d Cir. 2018) ("The issue is whether the petition merited a legal victory upon filing, even if it was later abandoned or denied based on a change in circumstances." (internal quotation marks omitted)); Ogundipe v. Mukasey, 541 F.3d 257, 261 (4th Cir. 2008) ("[A] visa petition is meritorious in fact for purposes of grandfathering under 8 C.F.R. § 1245.10 if, based on the circumstances that existed at the time the petition was filed, the beneficiary of the petition qualified for the requested classification."); Butt v. Gonzales, 500 F.3d 130, 135 (2d Cir. 2007) (reading the standard to "requir[e] that, based on the facts as they exist at the time of filing, the application should be granted"); Ali v. Gonzales, 197 F. App'x 485, 488 (7th Cir. 2006) (declining to review an IJ's denial of a petition to adjust status where the petitioner's application "on its face showed that he was not minimally qualified for the job"); Bustos v. Napolitano, 2012 WL 5354117, at *4 (D. Ut. Oct. 29, 2012) (remanding to determine whether the LCA "merit[ed] a legal victory" or "ha[d] legal worth" (internal quotation marks omitted)).

In <u>Matter of Butt</u>, the BIA set forth a standard for making that determination in the case of LCAs specifically, focusing on the flexible, collaborative nature of the LCA approval process in the late 1990s and early 2000s. 26 I. & N. Dec. at 114-117. The BIA looked to historical efforts by the former Immigration and Naturalization Service ("INS") to consult with the Department of Labor ("DOL") to determine what makes an LCA "approvable when filed." <u>Id.</u> at 115-16. The BIA summarized:

> [T]he DOL indicated that the agency does not have the ability to state definitively whether a certification will be meritorious until its adjudication is complete. . . . Therefore, the former INS adopted an approach that focused on whether a [labor certification] was "non-frivolous" and "properly filed" in presuming that most labor certifications meeting these requirements would also satisfy the "meritorious in fact" requirement for grandfathering purposes.

<u>Id.</u> at 116. The BIA then adopted its own definition of "meritorious in fact" in accord with the INS's approach, holding:

> [W]e conclude that a labor certification is "meritorious in fact" if it was "properly filed" and "non-frivolous," so long as a bona fide employer/employee relationship exists where the employer has the apparent ability to hire the sponsored alien and where there is no evidence that the labor certification is based on fraud. . . . In other words, a labor certification will be presumed to be "meritorious in fact" if it was "properly filed" and "non-frivolous," absent any apparent bars to its approval. Accordingly, a "properly filed" and "non-frivolous" labor certification will generally be "meritorious in fact" and thus, in turn, will also be "approvable when filed."

- 12 -

Id. at 116-17.[1]

The Oliveiras interpret Matter of Butt to create a burden-shifting standard under which the Oliveiras' initial burden is only to demonstrate that the LCA was properly filed and non-frivolous. After that burden is satisfied, the Oliveiras argue, the burden shifts to the agency to raise any apparent bars to the approval of the LCA. If the government presents such apparent bars, the burden would presumably shift back to the Oliveiras to demonstrate that the LCA nonetheless merited approval. The Oliveiras therefore argue that both the IJ and the BIA erred in focusing on whether the Oliveiras met a burden on the "meritorious in fact" prong as an initial matter.

Putting aside whether the Administrative Procedure Act would require the BIA to abide by its previous decisions, we decline to adopt the Oliveiras' proposed burden-shifting framework for three reasons. First, the Oliveiras have read Matter of Butt too mechanically. Matter of Butt itself never mentions shifting burdens. It does say that an LCA will be "presumed" to be

---

[1] Another consideration unstated in Matter of Butt but relevant to the standard for determining whether an LCA is meritorious in fact is that, unlike the approval of a visa petition, the approval of an LCA is governed by regulations promulgated by the DOL, not by the DHS or the DOJ. See generally 20 C.F.R. § 656.21. Those DOL regulations are not necessarily within the area of special expertise for the IJ and BIA, and the BIA may be hesitant to direct IJs to perform full explorations of the DOL regulations as they were in place and applied in 2001.

meritorious in fact, but that presumption comes only "absent any apparent bars to its approval." 26 I. & N. Dec. at 116. It also clearly requires "a bona fide employer/employee relationship . . . where the employer has the apparent ability to hire the sponsored alien." Id.

Second, and more importantly, such a rigid burden-shifting framework would be inconsistent with our precedent and the caselaw of other circuits, which keep the burden on the petitioner and focus more holistically on the legal merit and approvability of both visa petitions and LCAs. Although it was in the context of a visa petition instead of an LCA, we have previously rejected the kind of burden-shifting proposed by the Oliveiras, stating that "[t]he [petitioners'] argument that this record evidence cannot be relied upon to deny them grandfathering amounts to an attempt to shift their burden of establishing eligibility for grandfathering to one requiring the agency to disprove eligibility for grandfathering. As we have said, the burden was the petitioners' to bear." Santana, 566 F.3d at 241. There, we kept a holistic focus on the legal merit of the visa petition. Id. at 240-41. We found that the BIA's denial of grandfathering was supported by substantial evidence where, in the initial visa approval process, a notice of intent to revoke the petition identified "derogatory information" that cast doubt on the approvability of the petition. Id. at 241.

- 14 -

Similarly, we have rejected a petition challenging a BIA decision that denied grandfathering on the basis of an LCA, stating that "a finding of 'identified gaps' in a petitioner's application, where the petitioner has [had] . . . opportunity to explain the gaps but failed to do so, was sufficient to show that the application was not meritorious in fact." Da Cunha v. Mukasey, 304 F. App'x 892, 895 (1st Cir. 2008) (citing Echevarria v. Keisler, 505 F.3d 19 & n.3 (1st Cir. 2007)); see also De Acosta, 556 F.3d at 19-20 (keeping the burden on the petitioner while focusing on the definition of "properly filed").

Other circuits have also embraced a holistic approach to determining whether an LCA is "approvable when filed," and have placed the burden squarely on the petitioner. See Hyeng Kab Lee v. Holder, 407 F. App'x 638, 641 (4th Cir. 2010) (remanding to the BIA to "review the 'totality of the circumstances' surrounding a labor certificate"); Ali, 197 F. App'x at 488 (upholding a determination that an LCA was not "meritorious in fact" where the petitioner was "not minimally qualified for the job"); Bustos, 2012 WL 5354117, at *4 (remanding to determine whether the LCA "merit[ed] a legal victory" or "ha[d] legal worth").

Finally, we note that the rigid framework proposed by the Oliveiras could create an incentive for petitioners to withhold information about an LCA to prevent the government from using that information to identify apparent bars to approvability. This

- 15 -

would, in effect, make it more difficult for the IJ, the BIA, and reviewing courts to determine whether an LCA was approvable when filed.

We therefore decline to adopt a burden-shifting framework for determining whether an LCA is approvable when filed. Instead, we hold, consistent not only with Matter of Butt but also with Santana, Da Cunha, and Echevarria, that determining whether an LCA is approvable when filed requires a holistic inquiry that keeps the burden on the petitioners and focuses on whether the LCA merited a legal victory at the time and under the circumstances in which it was filed. A petitioner bears the burden of demonstrating that the LCA in question did not have the kinds of "identified gaps" we referenced in Da Cunha, 304 F. App'x at 895, "apparent bars" the BIA referenced in Matter of Butt, 26 I. & N. Dec. at 116, or "derogatory information" we referenced in Santana, 566 F.3d at 241.

That holistic inquiry, however, is not a license to deny grandfathering based on any perceived shortcoming in an LCA. In order to form a basis for the denial of an adjustment of status, the identified gap, apparent bar, or derogatory information must be tied to the evaluation of the legal merit of the LCA. The ultimate subject of the inquiry must always be whether an LCA should have been approved by the DOL at the time and under the circumstances in which it was filed.

- 16 -

Here, the IJ and the BIA did not keep their focus on that inquiry in the course of their evaluation of Oliveira's LCA. The IJ was correct that the Oliveiras bore the burden of demonstrating that the LCA was meritorious in fact, and it identified facts that it concluded undermined the LCA. But the IJ did not tie those facts to the standards or practices used by the DOL to approve an LCA in 2001. Similarly, the BIA cited Matter of Butt and identified facts to support its conclusion that "there is insufficient evidence that the employment relationship existed," but it failed to explain what aspects of an "employment relationship" it was examining, or how the facts that it cited demonstrated the lack of such a relationship. See, e.g., Browning-Ferris Indus. of California, Inc. v. Nat'l Labor Relations Bd., 911 F.3d 1195 (D.C. Cir. 2018) (exploring the nature of employer-employee relationships over the course of more than 40 pages). After all, the beneficiary of an LCA cannot become an employee or enter into an employment relationship until after the LCA is approved. See 20 C.F.R. §§ 656.20-656.32 (2001) (governing the approvability of LCAs in 2001 and contemplating that the application process will take place before employment commences). By contrast, in Matter of Butt itself, the BIA focused on the apparent ability of the employer to hire the petitioner, tying that focus to the former INS's inquiry into the DOL's LCA approval procedures. 26 I. & N. Dec. at 116.

- 17 -

The focus of the BIA's inquiry in this case is further obscured by its unexplained conclusion that the additional evidence proffered by the Oliveiras in their Motion to Remand would be insufficient to change the BIA's determination that the requisite employer/employee relationship did not exist. Oliveira's additional affidavit claimed: (1) at the time the LCA was filed, NF Business Corporation was a Massachusetts corporation in good standing, (2) Elyane Bechtinger was an officer of NF Business Corporation in 2002, not long after the LCA was filed, (3) Bechtinger interviewed Oliveira for a job with NF Business Corporation, and (4) at the conclusion of the interview, Bechtinger offered Oliveira the job. The BIA thus necessarily concluded, without explanation, that Oliveira would lack the requisite employer/employee relationship even if he interviewed with an officer of the employer who filed the LCA, a corporation in good standing, and that officer offered him the job referenced in the LCA. That conclusion further muddies the BIA's analysis, rendering it unclear what kind of employer/employee relationship the BIA is looking to find, what the "identified gaps" in the LCA were, what the "apparent bars" to its approvability were, or what the "derogatory information" about it was. The BIA's decision thus obscures the relationship between any perceived gaps and the standards or procedures used by the DOL for approving LCAs in April 2001.

By contrast, in Da Cunha we noted that "the IJ identified a specific discrepancy in the labor certification application." 304 F. App'x at 895. The "identified gap" in that case was the prospective employer's "inactive" status with the relevant state department of labor and the employer's failure to pay unemployment taxes for its workers. Id. Unlike here, then, the "identified gap" in Da Cunha tied directly to the prospective employer's ability to hire the petitioner.

Similarly, in Echevarria, the gaps that supported the denial of grandfathering were identified in the first instance by the immigration officer evaluating the visa petition. 505 F.3d at 18-20. The immigration officer relied on those gaps to deny the visa petition, making clear the relevance of those gaps to the petition's legal merit. Id. Here, neither the BIA nor the IJ connected the perceived factual deficiencies to the standards and procedures governing the LCA's legal merit. See also Ogundipe, 541 F.3d at 262 (tying the determination that the visa petition was not meritorious in fact to the specific requirements of 8 C.F.R. § 204.5(m)(4)).

In examining petitions for review of BIA decisions, we have held that "our review is limited to the reasoning articulated below." Mejia v. Holder, 756 F.3d 64, 69 (1st Cir. 2014) (quoting Patel v. Holder, 707 F.3d 77, 80 n.1 (1st Cir. 2013)). "A reviewing court should judge the action of the BIA based only on reasoning

provided by the agency, not based on grounds constructed by the reviewing court, and that basis must be set forth with such clarity as to be understandable." Mihaylov v. Ashcroft, 379 F.3d 15, 21 (1st Cir. 2004) (internal quotation marks and citations omitted); see also Khattak v. Holder, 704 F.3d 197, 208 (1st Cir. 2013) (remanding to the BIA because it had failed to present "a reasoned analysis of the evidence as a whole" (internal quotation marks omitted)).

The BIA and the IJ have not met that standard here. While they correctly undertook a holistic inquiry into approvability and kept the burden on the petitioners to demonstrate that the LCA was "meritorious in fact," neither the IJ nor the BIA articulated reasoning that connected the facts and circumstances of the Oliveiras' LCA to the standards and procedures used to approve LCAs in 2001.

## IV.

We therefore **grant** the petition for review, **vacate** the order of the BIA, and **remand** to the BIA for further proceedings consistent with this opinion.[2]

---

[2] Because we decide that the BIA has failed to apply the correct standard for determining whether an LCA is meritorious in fact, we do not decide whether the evidence supported the BIA's determination that the LCA was not meritorious in fact or whether the BIA's denial of the Oliveiras' Motion to Remand was an abuse of discretion. Nor do we decide any other issues raised by the petitioners.