# United States Court of Appeals
## For the First Circuit

No. 20-2144

AKEIM LE ANDREW THOMAS,

Petitioner,

v.

MERRICK B. GARLAND,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Barron, Selya, and Gelpí,
<u>Circuit Judges</u>.

Glenn L. Formica, with whom Formica, P.C. was on brief, for petitioner.

Greg D. Mack, Senior Litigation Counsel, Office of Immigration Litigation, Civil Division, with whom Brian M. Boynton, Acting Assistant Attorney General, Civil Division, and Sabatino F. Leo, Assistant Director, Office of Immigration Litigation, Civil Division, were on brief, for respondent.

February 8, 2022

**BARRON**, <u>Circuit Judge</u>.  Akeim Le Andrew Thomas is a native and citizen of Jamaica.  He petitions for review of a decision by the Board of Immigration Appeals (BIA) that affirmed the denial of his application for adjustment of status on statutory and federal constitutional grounds.  The petition is denied.

## I.

Thomas traveled to the United States on a temporary nonimmigrant visa in June 2016 but remained in this country for years after the visa had expired.  Then, on August 30, 2019, he was arrested by the Bridgeport, Connecticut Police Department on charges of possession of marijuana in violation of Connecticut General Statutes § 21a-279(a)(1), possession of a controlled substance with intent to sell in violation of Connecticut General Statutes § 21a-277(b), and possession of a controlled substance within 1500 feet of a school in violation of Connecticut General Statutes § 21a-278a(b).

The Department of Homeland Security (the government) initiated removal proceedings against Thomas thereafter, and Thomas conceded in those proceedings that he was removable under 8 U.S.C. § 1227(a)(1)(B).  He nonetheless sought to remain in the country by applying for adjustment of status under 8 U.S.C. § 1255(a).

Adjustment of status is a process by which "aliens physically present in the United States may obtain [lawful]

permanent resident status without leaving" the country to apply for a visa via consular processing. De Acosta v. Holder, 556 F.3d 16, 18 (1st Cir. 2009) (citation omitted). An individual can seek adjustment of status in a removal proceeding as a form of relief from removal, as Thomas did here. See id. The burden is on the applicant to establish both that he "satisfies the applicable eligibility requirements" and "that [he] merits a favorable exercise of discretion." 8 U.S.C. § 1229a(c)(4)(A).

A hearing on Thomas's application for adjustment of status was held on February 7, 2020. Thomas gave sworn testimony about the circumstances of his 2019 arrest in Connecticut. Specifically, he testified that he "wasn't aware that the marijuana [he was found with] was in the car" and that the plastic bags, a heat-sealer for those bags, and a scale that the police discovered while searching his home after his 2019 arrest were used by his wife to prepare and freeze meat -- rather than used by him to package drugs for sale as the state contends those items were used in the criminal charges against him.

The police report from the 2019 arrest was introduced as evidence at the hearing. Thomas did not object to the admission of the police report into the record, and he did not otherwise dispute the statements in the police report.

In an oral decision delivered on the same day as the hearing, the Immigration Judge (IJ) denied Thomas's application

for adjustment of status. The IJ's decision first determined that Thomas "was a credible witness, with the exception . . . that he was not credible about his criminal history" because his testimony about his 2019 arrest was "directly in contradiction with the [police] report." The IJ credited the police report's description of the arrest, which stated that "when [Thomas] was pulled over, he told the police that he had two pounds of marijuana in the car." As a consequence, the IJ found, based on Thomas's testimony "denying the knowledge of marijuana in the car at the time of the traffic stop," that Thomas "was not candid about his criminal history."

The IJ explained that Thomas's relatively recent date of entry, his U.S. citizen spouse and child, the hardship his wife and child faced after Thomas was detained by immigration authorities, and his other family members in the United States, two of whom are U.S. citizens and two of whom are lawfully admitted residents, all weighed in favor of granting his application for adjustment of status. But, the IJ determined that Thomas's sporadic work history in the United States, his failure to pay taxes or seek work authorization prior to the 2019 arrest, and the circumstances of his 2019 arrest all weighed against granting the application.

As to that last factor, the IJ noted that Thomas's criminal charges in Connecticut were "open" and had "not led

to . . . conviction." The IJ explained, however, that it "is entitled and does indeed review the criminal behavior in this case to determine whether [Thomas] is entitled to a favorable exercise of discretion."

After reviewing the substance of the police report and Thomas's testimony about the 2019 events, the IJ made the following findings of fact regarding both the events themselves and Thomas's truthfulness regarding them:

> First of all, [Thomas] admitted to the police that he had two pounds of mari[j]uana in his car. Though [Thomas] claims on cross examination that he didn't know the drugs were there, he did tell the police that the drugs were there. And, indeed, the police report indicates that the drugs were located contained within a white large plastic bucket . . . in the rear passenger seat of a black Lexus. The court finds that its implausible that [Thomas] would not know that two pounds of mari[j]uana in a large white plastic bucket sitting in a rear passenger seat in an SUV were not there.
>
> Further, the court will note that, also in his car, the respondent was found with $1,600 cash in his wallet, and the total amount of money seized from the respondent was approximately $2,500. The court finds that this is consistent with someone who is conducting street-level marijuana sales.
>
> Next, police conducted a consensual search of the respondent's house. In there, they found a white Ziploc heat sealer used to package drugs. The respondent's claim that his wife uses this to seal meat is implausible, and the court does not credit it. Next, they found a digital scale, also recognized by the officers as a device for packaging narcotics.

- 5 -

> Respondent's claim that this is used by his wife to weigh meat is not plausible, and the court does not credit it. Next, in a dresser, the officers found a .38 caliber Colt revolver, and they found an assortment of 9 millimeter, .38 caliber ammunition. The digital scale, the heat sealer, and the gun, and the ammunition are all consistent with drug dealing and go to discredit the respondent's testimony he was not selling drugs.

The IJ also noted that the 2019 arrest "was not a case in which the respondent was pulled over by normal patrol officers for a motor vehicle violation," as Thomas "was surveilled after an intensive investigation" and after the Bridgeport, Connecticut Police Department had received a tip from a confidential informant that "an individual meeting the respondent's description was selling large quantities of marijuana from a black Lexus SUV bearing Connecticut registration AS27017," which was the license plate on the vehicle Thomas was stopped in. The IJ found that Thomas "was openly selling drugs, marijuana[,] in the Bridgeport[,] Connecticut area[,] [a]nd, for those reasons, [it] [concluded that] Thomas [was] not entitled to a favorable exercise of discretion."

Ultimately, the IJ determined, after weighing the factors in favor and against granting Thomas's application for adjustment of status, that Thomas had not met his burden of showing that he merited a favorable exercise of discretion. Thomas then

- 6 -

appealed the IJ's decision to the BIA, which affirmed the IJ's ruling on July 7, 2020.

The BIA explained that the IJ's "adverse credibility finding regarding [Thomas]'s testimony was not clearly erroneous" and that the IJ "properly considered the respondent's positive and negative factors, [finding] that the seriousness, recency and extensiveness of the respondent's criminal behavior were negative factors that outweighed any positive factors." The BIA also rejected Thomas's contention that the IJ's reliance on the police report was in error. The BIA explained that:

> [An IJ] may consider police reports in deciding whether a grant of discretionary relief is warranted. The facts of the arrest and attendant circumstances often have probative value in assessing whether an alien warrants a grant of discretionary relief, even if there was not a conviction. Therefore, the [IJ] did not err in relying on the police reports. Moreover, contrary to the respondent's argument, there was no indication that reliance on the police report was unreliable or fundamentally unfair, particularly in light of the confidential informant and the narcotics division's involvement. (citations omitted).

Thomas then filed this petition for review.

**II.**

Thomas first challenges the BIA's ruling on the ground that the use of the police report in denying his application for adjustment of status was "fundamentally unfair," Lee v. Barr, 975 F.3d 69, 75 (1st Cir. 2020), because he "has not been convicted of

- 7 -

a crime."[1]  As Thomas raised the challenge below, and it presents a question of law, we have jurisdiction to consider it.  See Tacuri-Tacuri v. Garland, 998 F.3d 466, 471 (1st Cir. 2021).  But, reviewing de novo, see id., we see no merit to it given that we have repeatedly held that "an immigration court may generally consider a police report . . . when making a discretionary immigration decision, even if an arrest did not result in a charge or conviction," Mele v. Lynch, 798 F.3d 30, 32 (1st Cir. 2015); see also Perez v. Barr, 927 F.3d 17, 20 (1st Cir. 2019); Henry v. INS, 74 F.3d 1, 6 (1st Cir. 1996).[2]

---

[1] To the extent that Thomas could be seen as challenging the IJ's adverse credibility finding against him, as the government suggests in its briefing to us, Thomas disavows that he is bringing such a challenge in this petition for review.

[2] Thomas's petition for review can also reasonably be understood to contend that the BIA's reliance on his "criminal history" in affirming the IJ's denial of his application for adjustment of status was in error because 8 U.S.C. § 1255(a), which gives the Attorney General discretionary authority to adjust an individual's status, does not allow for consideration of that history.  Thomas, however, did not advance this argument to the BIA, and thus has not exhausted it, depriving us of jurisdiction to consider it.  See Sanabria Morales v. Barr, 967 F.3d 15, 19 (1st Cir. 2020) ("Although 'we review the agency's legal interpretations de novo,' . . . we may not entertain arguments not made to the BIA, which 'fail[] for lack of exhaustion.'" (second alteration in original) (quoting Molina De Massenet v. Gonzales, 485 F.3d 661, 664 (1st Cir. 2007))); García-Cruz v. Sessions, 858 F.3d 1, 7 (1st Cir. 2017) (holding that non-exhaustion in immigration context is jurisdictional and therefore court of appeals may consider that issue sua sponte)".

Thomas's remaining challenge to the BIA's ruling, which we also review de novo, see Tacuri-Tacuri, 998 F.3d at 471, is premised on his Fifth Amendment right to due process under the U.S. Constitution. He contends that his due process rights were violated in the removal proceedings because those proceedings were held while he faced pending criminal charges in Connecticut state court and the government relied on the police report underlying those charges in the removal proceedings.

In pressing this argument, Thomas acknowledges that he agreed to testify about the circumstances of his 2019 arrest at his removal proceedings and that he did so without objecting at that time to the proceedings being held. Nor does he dispute that he made no objection at that time to the admission of evidence concerning that arrest, including the police report discussed above. He nonetheless contends that his due process challenge remains viable, simply because the removal proceedings were held while the state criminal proceedings were pending, given that evidence about the 2019 arrest was relied on in the removal proceedings.

But, even assuming that Thomas did not waive this due process claim through his conduct in the removal proceedings and that (as the government contends) he raised it before the BIA, Thomas fails to explain how he had a protected liberty interest in the discretionary form of relief from removal that he voluntarily

- 9 -

sought -- adjustment of status.  See Naeem v. Gonzales, 469 F.3d 33, 38-39 (1st Cir. 2006).[3]  It thus follows that he cannot meet his burden to show that he was deprived of such an interest without due process of law when he was denied that relief based in part on the evidence relating to his 2019 arrest.

## III.

For the foregoing reasons, the petition for review is **denied**.

---

[3] The several cases that Thomas invokes involving requests for bail in criminal proceedings do not support his cause, see, e.g., United States v. Santos-Flores, 794 F.3d 1088 (9th Cir. 2015); United States v. Boutin, 269 F. Supp. 3d 24 (E.D.N.Y. 2017); United States v. Galitsa, No. 17-00324, 2016 WL 11658188 (S.D.N.Y. July 28, 2016); United States v. Trujillo-Alvarez, 900 F. Supp. 2d 1167 (D. Or. 2012), given that Thomas concedes he is not detained and is not seeking release from detention.